### OAKLEY v. ROBERTS.

(Court of Appeals of District of Columbia. Submitted January 10, 1923. Decided June 4, 1923.)

No. 1540.

Patents ⬅91(4)—Evidence held to show priority of conception by senior applicant.

In interference proceedings, evidence that both parties were relying on the same machine as their reduction to practice, that the senior applicant had described the invention to others before the machine was constructed, and claimed that he had had it constructed by the junior applicant in accordance with his ideas, *held* sufficient, in connection with circumstances tending to show the machine was constructed on the orders of the senior applicant and became his property, to entitle that applicant to the invention, notwithstanding the junior applicant's claim that he conceived the machine to accomplish a purpose desired by the senior applicant.

Appeal from the Commissioner of Patents.

Interference proceeding between Clifford H. Oakley and Fred Thomas Roberts. From a decision of the Commissioner of Patents, awarding priority to Roberts, Oakley appeals. Affirmed.

L. E. Varney and E. G. Curtis, both of New York City, and A. M. Holcombe and William G. Johnson, both of Washington, D. C., for appellant.

Albert H. Bates, of Cleveland, Ohio, for appellee.

Before ROBB and VAN ORSDEL, Associate Justices, and SMITH, Judge of the United States Court of Customs Appeals.

SMITH, Acting Associate Justice. This is an appeal by Clifford H. Oakley from the decision of the Commissioner of Patents awarding priority of invention to Fred Thomas Roberts for a process or method of entrapping and sealing compressed air in hollow rubber articles. It appears from the record that Fred Thomas Roberts filed in the Patent Office on the 2d day of October, 1913, an application for a patent for

---

a method of making inflated rubber articles, and that the patent applied for was issued on July 13, 1915.

On the 17th of February, 1916, Clifford H. Oakley made application for a patent on an improved method of making inflated hollow rubber articles, and on the 15th of March, 1918, requested the Commissioner of Patents to place his application as then amended in interference with Roberts' patent upon such counts as the Examiner might think suitable for initiating the interference. The claims of Oakley's amended application, put in interference with Roberts' patent and constituting the issue in the interference proceedings, were as follows:

| Roberts'<br>Claim No. | Oakley's<br>Claim No. | |
|---|---|---|
| 8 | 13 | The method of making hollow rubber articles consisting in submitting such article in an unclosed condition to an enveloping fluid under pressure, closing it while under such pressure, and thereafter vulcanizing it while the pressure is maintained within it. |
| 12 | 15 | The method of making inflated hollow articles consisting in submitting them in an unclosed condition to an enveloping fluid under pressure while confining them externally by walls limiting the inflation and closing them while in such fluid. |
| 16 | 17 | The herein described method of sealing compressed air within a hollow rubber article, consisting in subjecting the article in an unclosed condition and a condition adapted for curing to an enveloping atmosphere of air under pressure, then closing the article within such atmosphere to entrap compressed air within it, continuing to hold the article closed with such air entrapped, and curing the article while so held. |
| 17 | 18 | The method of making inflated rubber articles consisting in forming the articles in parts, bringing such parts together in an enveloping body of fluid under pressure and vulcanizing the article while the same fluid is confined within it. |
| 18 | 19 | The method of making inflated rubber articles consisting in forming the article in parts, bringing such parts together within a chamber to which compressed air is supplied from the outside, whereby such air is entrapped within the article, and vulcanizing the article while the same air is confined within it. |

On the evidence submitted, the Examiner of Interferences found that both parties relied on the same actual reduction to practice, and that the only question involved was priority of conception. As Oakley's application for a patent was filed after the issuance of a patent to Roberts, the Examiner held that Roberts was the senior party, and that therefore the burden rested on Oakley of proving his case beyond a reasonable doubt. He decided, however, that the evidence established that Roberts had conceived the process of entrapping and permanently sealing compressed air in hollow rubber articles before he employed Oakley to make the working drawings, and that, as Oakley's conception did not come to him until immediately prior to his making of the working drawings, priority of invention should be awarded to Roberts.

On appeal by Oakley from that decision, the Examiners in Chief declined to hold that Oakley was bound to prove his case beyond a reasonable doubt, and ruled that the burden of proving prior conception of the invention was on Roberts. The Examiners in Chief nevertheless decided that Roberts had established by competent evidence that his conception of a method of entrapping and sealing compressed air in hollow rubber articles antedated that of Oakley, and, affirming the decision of the Examiner of Interferences, awarded priority to Roberts. From the decision of the Examiner of Interferences Oakley prosecuted an appeal to the Commissioner of Patents. The Assistant Commissioner held that Oakley had wholly failed to make proof of the invention, and therefore affirmed the decision of the Examiners in Chief awarding priority to Roberts.

The evidence establishes to a conclusion that Roberts, when about 23 years of age, conceived the idea of reducing the effect of punctures on automobile tires by substituting for the inner tire in use a cellular filler or inner tube containing compressed air. By designing his cellular inner tube with a V-cut, he thought that the bringing together of the faces of the V when the inner tube was forced into the casing would sufficiently compress the air to produce expansion of the unpunctured into any adjoining punctured cell. That method failing when put to the test of actual use, Roberts returned to his original idea of introducing compressed air into the cells, and finally, prior to June 1, 1910, produced sketches of a device which he felt confident would accomplish his purpose. That those sketches embodied the process or method for which he subsequently secured a patent is confirmed by the testimony of six unimpeached and credible witnesses, all of whom saw the sketches prior to the date fixed by Oakley as the date of his conception. Moreover, that Roberts' conception of a means of entrapping compressed air in hollow rubber articles antedated Oakley's conception is supported by the testimony of Lloyd and Camp, both of whom testified that Roberts, in the spring of 1911, made explanations of his appliance, which we find substantially conform to the vital claims of his patent. In addition, we have Oakley's admission that he never thought of a device, or a method, or a process of entrapping compressed air until after his meeting with Roberts in the office of Horwitz, which meeting occurred on the 23d of August, 1911. Roberts and Horwitz testified that at that meeting, in the presence of L'Hommedieu, an employee of the Essex Rubber Company, of which Oakley was president, Roberts submitted sketches and made a lengthy explanation to those present of a machine which would introduce compressed air into the cells of a filler for automobile tires and vulcanize the filler, so as to prevent the escape of the compressed air.

L'Hommedieu was not called by Oakley to contradict that testimony, and Oakley's statement that he never received from Roberts any suggestion or assistance as to such device or method is wholly unsupported. Oakley admitted that he contracted with Roberts to make a mold, prepare working drawings, and build in conformity therewith a machine which would charge the cells with compressed air. The working drawings were made and the machine was ordered by Oakley on

October 18, 1911. When completed, the machine was delivered to Roberts as his property, and operated by him at his own expense in the factory of the Essex Rubber Company.

Oakley utterly failed to contradict Roberts' testimony that Oakley's working drawings called for an inoperative horizontal piston head, that the machine was constructed in accordance with that design, and that, when Roberts called attention to the error, he (Oakley) *pointed out that the mistake appeared on Roberts' sketch, from which Roberts claimed the working drawings were made.* Roberts' explanation of the horizontal piston head was corroborated by the undisputed fact that a new piston head was ordered and paid for by Roberts—a course of conduct quite consistent with Roberts' story, but completely at odds with the theory that Oakley was wholly responsible for the working drawings and the machine, and that both were made by Oakley, unaided by sketch or suggestion from Roberts.

The fact that the machine, after its construction, became the property of Roberts, and was operated wholly by Roberts at his own cost under the eye of Oakley in the Essex Rubber factory; the bringing to the factory by Roberts with Oakley's permission of several people for the understood purpose of financing the introduction and production of the appliance; the neglect of Oakley to make any claim to or to manifest any interest in the device until four years after the first machine was made, and then only on seeing a check for $10,000, executed by Spalding & Co. to Roberts for royalties under the patent issued to Roberts; the failure of Oakley to positively deny Roberts' testimony that he (Oakley) endeavored on October 14, 1915, to secure a license under Roberts' patent—cannot be reconciled with Oakley's belated assertion of originality and prior conception, and are entirely consistent with Roberts' claim that he was the inventor of a method of entrapping and permanently sealing compressed air in hollow rubber articles.

The decision appealed from is fully supported by the evidence, and must therefore be affirmed.